IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION AT KNOXVILLE


CIVIL ACTION NO. 3:12-cv-159 (WOB-HBG)


O-N Minerals (Luttrell) Company
*D/B/A* Carmeuse Lime & Stone                              PLAINTIFF


VS.            MEMORANDUM OPINION AND ORDER


Int'l Chemical Workers Union Council,
Local Union 1036-C                                         DEFENDANT


This is an action under the Labor-Management Relations Act, 29 U.S.C. §§ 141, *et seq.*, and the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*, to vacate the remedy granted in an arbitration award. Defendant has counterclaimed to enforce the remedy granted by the arbitrator. This matter is before the Court on the parties' cross motions for summary judgment.

Finding oral argument to be unnecessary, the Court now issues the following Memorandum and Opinion and Order.

*Factual and Procedural Background*

The Plaintiff, Carmeuse Lime & Stone Company ("the Company"), is a producer of lime and limestone products. (R.

1

944).[1] The Defendant, the International Chemical Workers Union Council ("the Union"), represents the employees of Carmeuse. A union relationship was created between the employer and the Union in 1993 when the Union was certified as the bargaining representative for the employees of Tenn. Lutrell Company. (Id.) The first Collective Bargaining Agreement ("CBA") between the employer and the Union was in 1994, with following CBAs between various employers and the Union in 1997, 2000, 2003, 2005, 2007 and 2009. (R. 151-52). The current employer took over the business in 2008. (R. 953).

The Union filed a grievance on January 6, 2011, under the current 2009 CBA, after the Company posted unilateral mid-term changes to the Work Rules on January 3, 2011, which went into effect on January 10, 2011. (R. 74, R. 319, the entire 2009 CBA can be found R.720-54). The grievance stated: "Work Rules and Drug Policies stay the same and not be changed, will be willing to discuss during next negotiations." (R. 319).

The Company denied the grievance, and the grievance was then submitted to final and binding arbitration before Louis D'Amico ("the Arbitrator"). The arbitration hearing was held on December 8, 2011. (R. 1). On February 25, 2012, the Arbitrator

---

[1] R. stands for the Administrative Record submitted by the Parties, which is found at Docket #22.

issued his arbitration award ("the Award"), which sustained the grievance. (R. 940-59). The Award found that the Company violated the parties' 2009 CBA in its "implementation and enforcement of the points-based attendance and lateness policy that was apparently posted on or about April 12, 2010, and its unilateral posting of the revised 'Work Rules' on or about January 10, 2011." (R. 958). Thus, there are two changes to the Work Rules that are at issue: the attendance policy changes that were posted on April 12, 2010, which adopted a "no fault" attendance policy, and the other Work Rules changes posted January 10, 2011. The April 2010 changes were to the attendance policy while the January 2011 changes included changes to the discipline policy, the rules of conduct, the safety rules, the drug and alcohol policy, the sexual harassment policy, and the EEO policy. (R. 401-420).

There is a disagreement over whether the April 2010 attendnace policy changes were part of the grievance. Wendell Wise, the employee who filed the grievance, when asked, during the arbitration hearing, by the Company's counsel whether the Union had grieved the changes to the attendance policy said "No, we didn't." (R. 196). Then, on redirect, he was asked by the Union's counsel: "the union did not file a grievance on that particular case [attendance policy]; is that correct?" and Mr.

3

Wise responded: "That's correct." (R. 198). However, the Union points to an exchange between the arbitrator and Mr. Wise as proof of the scope of the arbitration, (R. 185-86), which involved a hypothetical question asked by the Arbitrator. (R. 177-86). The Arbitrator added Mr. Wise's response, verbatim, in the Award, finding that the attendance policy was before him.

The Union asserts, and the Arbitrator found, that the Union negotiated the Work Rules (which are a separate document from the CBA) in 1998 and again in 2005. (R. 953). The Arbitrator found that when the Company negotiated the 2009 CBA, it then, in accord with "past practice," began negotiating the Work Rules, which include the attendance policy, with the Union. The Company offered new Work Rules, the Union offered counter-proposals, and the Company then withdrew its proposals. (R. 955). The Arbitrator found that all of this indicated that the Work Rules were "part and parcel" of the CBA, and mandatory bargaining over any changes was required. (R. 956).

### *Analysis*

The Company's principal argument is that the Arbitrator used extrinsic evidence in interpreting the CBA, in violation of the CBA itself, which shows the Arbitrator failed to arguably construe the CBA. In addition, the Company asserts that the Arbitrator had no jurisdiction over the grievance before him,

4

because the Union failed to grieve the matter when the "no fault" attendance policy was adopted in 2010, although the Union did file a charge before the NLRB, which it lost.

The Union argues that the Arbitrator arguably construed the CBA by looking at the past practice of the parties, and finding that the Work Rules were incorporated into the CBA. In addition, the Union argued that such drastic alterations of long-standing and critically important policies were not waived by the Union for failing to grieve prior changes, and the changes could not be adopted unless additional bargaining occurred.

The Arbitrator held:

> As to the Employer's contention that the union had waived bargaining rights by acceding to unilateral changes in 2009 and 2010, the Board has long held that a failure to invoke bargaining rights to certain changes in the past does not enact a waiver of such rights over other changes in the future. Johnson-Bateman, Supra at p. 188. "It is not true that a right once waived under the Act is lost forever. Each time new rules are issued," the Court continued, "the union has the election of requesting negotiations or not. An opportunity once rejected does not result in a permanent close out." NLRB v. Miller Brewing Company, 408 F.2nd 12, 15 (C.A. 9 1969). See also Amoco Chemical Co., 328 NLRB 1220, 1222 (1999). The Employer makes much of the Union's lack of a grievance in the Employer's action implementing various policies and in 2008 and 2009. The one page policies on "No Idle", "Hot Work Permit" and "Use of Seat Belts" direct employees to be safe in their operation of either plant equipment or their own vehicles. (See ER. Ex. No. 15) (TR. 176-177, 225, 227-228). As Mr. Wise testified, all employees and management here

5

observe safety – you "don't argue safety." The Union
was simply being reasonable in their approach to these
policies posted before their becoming effective.

(R. 954, 955.)

Under Sixth Circuit precedent, this Court's review of an Arbitrator's decision in a labor arbitration is extremely narrow: "whether the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Brotherhood. of Locomotive Eng'rs & Trainmen v. United Transp. Union*, 700 F.3d 891, 901-02 (6th Cir. 2012). *See also Michigan Family Res., Inv. v. Serv. Emps. Int'l Union Local 517M,* 475 F.3d 746 (6th Cir. 2007); *Totes Isotoner Corp. v. Int'l Chem. Workers Union Council/UFCW Local 664C*, 532 F.3d 405 (6th Cir. 2008).

The *Brotherhood* court also emphasized that the same restrictive review was applicable to the Arbitrator's decisions regarding what issues were before him or her:

> But what of the deference due to an arbitrator's interpretation of the issues submitted to him? By what standard are courts to review a party's claim that an arbitrator exceeded his authority because he decided issues the parties did not submit to him, or relied on materials the parties did not present? Although *Michigan Family* was silent on this matter, *our case law is clear that an arbitrator's authority is not strictly confined to the "technical limits of the submission."* Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.,* 155 F.3d 767, 772 (6th Cir. 1998) (internal quotations and citation omitted). This court has reasoned:

6

> Considering the strong presumptions in favor of a party's right to arbitration and the extent of an arbitrator's authority, *it would be a strange and grudging interpretation of [the] Steelworkers Trilogy to demand that arbitrators stay narrowly within the technical limits of the submission....* [T]he presumption of authority that attaches to an arbitrator's award applies with equal force to his decision that his award is within the submission. *Johnston Boiler Co. v. Local Lodge No. 893, Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, AFL-CIO,* 753 F.2d 40, 43 (6th Cir. 1985).

*Bhd. of Locomotive Eng'rs & Trainmen*, 700 F.3d at 902 (emphasis added).

The Arbitrator's award here makes clear that he was interpreting the CBA in this case, holding that the subject of the work rules and attendance policies could not be imposed during the term of the contract, unless there was renewed bargaining. Under the above authority, therefore, the Court concludes that the award must be enforced.

Therefore, having reviewed this matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED:** that plaintiff's motion for summary judgment (Doc. 25) be, and is hereby, **DENIED**, defendant's motion for summary judgment (Doc. 23) be, and is hereby, **GRANTED**; plaintiff's motion to strike the affidavit of Mike Elick (Doc.

7

28) be, and is hereby, **GRANTED**; and defendant's motion to strike and/or not consider the Declaration of Debbie Perry (Doc. 35) be, and is hereby, **GRANTED.** A separate judgment shall enter concurrently herewith.

This 12th day of September, 2013.



Signed By:
William O. Bertelsman  WOB
United States District Judge